**FILED**

17 NOV 22 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-30260-1 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| MARCUS PERRY, Individually,<br><br>    Plaintiff,<br><br>v.<br><br>INTERMEDIA, INC., a Washington<br>Corporation doing business in the State of<br>Washington.<br><br>    Defendant. | NO.<br><br>SUMMONS |

**TO THE DEFENDANT:**

  A lawsuit has been started against you in the above entitled court by Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

  In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 20 days after the service of this Summons within the State of Washington or 60 days if served outside of the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to

SUMMONS - 1 of 2

Thaddeus P. Martin, Attorney at Law
7121 27th St. W
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

what it asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this _____ day of November, 2016.

THADDEUS P. MARTIN, ATTORNEY AT LAW

By _____
Thaddeus P. Martin, WSBA No. 28175
Tmartin@thadlaw.com
Attorney for Plaintiff

SUMMONS - 2 of 2

Thaddeus P. Martin, Attorney at Law
7121 27th St. W
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

EXHIBIT A
Page 2 of 28

FILED

17 NOV 22 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-30260-1 SEA

1
2
3
4
5
6
7
8

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

9

| | |
|---|---|
| MARCUS PERRY, Individually, | NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | |
| INTERMEDIA, INC., a Washington Corporation doing business in the State of Washington. | |
| Defendant. | |

10
11
12
13
14
15
16

## I.    INTRODUCTION

1.1    COME NOW the Plaintiff, by and through her attorney Thaddeus P. Martin of

Law Office of Thaddeus P. Martin, and through this Complaint and by way of claim allege:

## II.    JURISDICTION AND VENUE

2.1    The Court has original jurisdiction over this matter pursuant to RCW 2.08.

Venue is proper in this Court under RCW 4.92.010 because many the events surrounding this

lawsuit occurred in King County.

## III.    PARTIES

### 3.1    Plaintiff

17
18
19
20
21
22
23
24
25
26

COMPLAINT FOR DAMAGES - 1 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

3.1.1    Marcus Perry ("Plaintiff") is an African American man, a citizen of the United States of America and resides in Pierce County, Washington.

**3.2    Defendants**

3.2.1    Intermedia, Inc., ("Defendants"), operated in accordance with the State of Washington and provide services to the public.

3.2.2    Intermedia employs more than 15 employees and has an organized chain of supervision.

3.2.3    Plaintiff alleges liability under respondeat superior and alleges that the Defendant employees are vicariously liable for the actions of their employees within the course and scope of their employment.

## IV.    FACTS

4.1    The above named Plaintiff brings his claims against Intermedia under RCW 49.60, et seq. for unlawful discrimination, retaliation and termination.

4.2    Plaintiff's manager, David Schiller, engaged in a pattern and practice of racial discrimination and the creation of a racially hostile work environment.  On March 31, 2016, Schiller pulled plaintiff aside on the work floor and stated that plaintiff did not forecast properly and that his in-month funnel dropped from 90K+, down to 54k. Plaintiff explained to Shiller that he followed Shiller's instructions conveyed to both plaintiff and the team and had the team push deals out that were not sure bets to close for the month of April 2016.  Schiller then yelled at plaintiff on the floor, in front of the co-workers that plaintiff supervised, stating that is not what he said with a very escalated tone explaining that neither plaintiff nor the team properly listened to him in a previous meeting.  Schiller sought to embarrass plaintiff in front of the staff.  Plaintiff explained that he was following Schiller's directions and that he and his

COMPLAINT FOR DAMAGES - 2 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

entire team heard Schiller tell them to only have "what's real" in their Salesforce Funnel. Plaintiff asked if they could have the discussion off the floor since Schiller was getting further escalated to the point that he continued yelling at plaintiff in front of other agents in the business in plain sight for anyone to see/hear. Schiller refused to do so stating that plaintiff was not listening and continued to racially degrade plaintiff by this blatant disrespect in front of plaintiff's peers. Plaintiff continued to attempt to de-escalate the matter by telling Schiller that he would make the corrections and explaining to Schiller that he stayed late that day to get the report as accurate as possible for his meeting with Mike Gold (CEO).

4.3     On April 13, 2016, Schiller met with plaintiff in the morning to tell plaintiff that he wanted the team to work on driving more numbers. Plaintiff informed Schiller that he agreed, and asked what his suggestions were. At this point Schiller informed plaintiff that the team needs to be on the phone more. Plaintiff explained that the team works their scheduled shift, and even stay later at times, outlining the fact that the team only takes time off the phones to eat lunch. At this point Schiller informed plaintiff that the team should not be taking lunch if they need to sell more and that they can eat at their desks. This is when plaintiff informed Schiller that he disagreed with that tact, as the agents are required to take a lunch within 5 hours of starting their working shift. Schiller then verbally attacked plaintiff and told plaintiff that was "not coachable and need to listen more." Plaintiff then informed Schiller that he will work closer with the team to strategize on ways to bring in more revenue.

4.4     On April 13, 2016, Schiller requested another meeting with plaintiff, however this time upon meeting up with Schiller, plaintiff was informed that he was going to be given a "Verbal Written Warning". When plaintiff read through the requirements that Schiller had written down, it stated that plaintiff "Needed to be on more conference calls with our Sales

COMPLAINT FOR DAMAGES - 3 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

Engineer (Cameron Boswell)." Schiller also stated that plaintiff needed to display a "better form of coachability." When plaintiff asked Schiller if this was due to their conversation earlier in the day, Schiller agreed that it was. Plaintiff explained that nothing on the form were topics that they had ever previously discussed, and regarding his disagreement with plaintiff's coachability regarding team members taking lunch, plaintiff explained that he was only operating under WA State law.  Schiller disregarded the feedback that plaintiff provided and informed plaintiff that he needed to sign the document. At that point, plaintiff informed Schiller that he could not do so as he did not agree with being written up for following state law. Schiller informed plaintiff that he had "no choice". Shortly after plaintiff went to Desiree in Human Resources and explained the situation, she agreed with plaintiff's stance regarding agents taking lunch, and stated that plaintiff "was not obligated to sign the document".

4.5     On April 19, 2016, plaintiff had a one on one with Schiller to discuss areas of improvement with team and to focus on "B" level talent in an effort to get them to "A" level talent.  During this meeting, plaintiff scratched his eyes and Schiller stated, "you see, that kind of behavior really starts to piss me off." Plaintiff asked what he meant and Schiller informed plaintiff that he needed to display more patience as his body language indicated that he was not paying attention to him. Plaintiff explained to Schiller that he had medically documented seasonal allergies, and apologized if it seemed as if he was not paying attention to him.

4.6     On May 13, 2016, during a meeting with Schiller at 7 a.m., Schiller informed plaintiff that it was unacceptable for him to leave during his regularly scheduled shift. Plaintiff apologized and explained that he had been working 12 hour days for much of the month. Schiller then informed plaintiff that working that many hours was "table steaks."

COMPLAINT FOR DAMAGES - 4 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

4.7     On July 22, 2016, Schiller continued to ask that plaintiff provide information to him about a daily forecast. Plaintiff was the only manager asked to do this. Plaintiff asked Schiller how he does his forecast for his Partner team that he manages, and if he can give plaintiff an example.  Schiller refused to do so, stating forecasting is about knowing your funnel. Plaintiff was the only Manager held to this standard.

4.8     On July 25, 2016, Schiller again asked plaintiff about his forecasting and why his daily forecasting was off. Plaintiff explained that daily forecasts are tough due to certain matters on the customers' side slowing down the buying process. Plaintiff then again asked Schiller in the Management meeting for an example of how he forecasts. At this point Schiller's entire messaging changed as he told plaintiff "it's ok to be off."  Plaintiff asked if he could have an example on the day so he could better himself and Schiller refused to provide one. Later in passing Schiller verbally confirmed that plaintiff was the only manager being held to this standard.

4.9     On August 9, 2016, Schiller called for a meeting with plaintiff where he said that he was concerned about the team. Plaintiff then asked him for more clarity because plaintiff's team closed more deals in July than they ever had and also accumulated more MRR (Monthly Recurring Revenue) than ever before under the new format of keeping accounts for 180 days rather than the life of the account. Plaintiff explained this to Schiller when they met up and Schiller began berating plaintiff's abilities as a leader, telling plaintiff that he did not come to him for help. Plaintiff then explained that in talking to Naveed, the marketing manager, they not only closed out the month strong in July but also started the month of August stronger than any other time before so well that Costco wanted to do more "Spotlight Campaigns" with Intermedia. Schiller stated that he was on the call with Costco and that

COMPLAINT FOR DAMAGES - 5 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

information was not true. Then Schiller began to tell plaintiff that he was not tracking and dispersing leads properly. Plaintiff then explained that he was following the process planned and everything was handled accordingly. At that point Schiller started to turn red and stated that he was "starting to get pissed." Plaintiff told Schiller that he had emails from Schiller to clarify that plaintiff was saying was true. Schiller said he did not want to see them. At that point, Schiller started to say that plaintiff did not come to him enough with updates and to get help from him. Plaintiff responded that he did, but Schiller does not complete plaintiff's requests in many cases. Plaintiff provided the latest example from just the day prior, where Schiller was supposed to send out team numbers the previous week and Monday, but he failed to do so. Schiller then said that he never agreed to have that information out. Plaintiff explained that he had an email on this as well but Schiller again refused to see it. At this point plaintiff told Schiller that his lack of acceptance to plaintiff's feedback was really concerning and makes it difficult for plaintiff to approach him. Schiller then told plaintiff that he would work on his communication going forward. Later that day, plaintiff met with Naveed, the marketing manager, who stated that Schiller has never been on any of the Costco calls, and that the feedback he gave plaintiff was false. This information was alarming because it was a clear indicator that Schiller was not telling the truth and attempting to set plaintiff up. Naveed then stated that he knew Schiller was harder on plaintiff and pushed plaintiff. At this point plaintiff told Naveed that he wanted a good working relationship with Schiller but that a key factor for that Schiller hold up his end of the deal and follow thru on his commitments, and most of all treating plaintiff fairly compared to others that report to him.

4.10    In September of 2016, a new SVP (Senior Vice President of Sales) named "Eric Martorano" started working. Martorano had his first meeting with the team a couple

COMPLAINT FOR DAMAGES - 6 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

weeks after he started. During this meeting, he informed plaintiff and the team that he was a man of values, he believed in coaching up individuals and that through his entire career with Microsoft he only had to terminate one employee. Martorano also stated that he believed firmly in work-life balance, and that he would generally get in around 8 a.m. and leave around 4:45pm to coach his son's football team.  Though Martorano's initial statements sounded encouraging, it was only 2 weeks later when he started making unprofessional gestures towards the team, such as pretending like he was sleeping, giving a "thumbs down."  Or yelling "sell some shit."  This type of behavior and mannerism continued for a few months.

4.11    In January of 2017, an announcement had been made that plaintiff would no longer be reporting to David Schiller, instead reporting to Craig Chirolo.  Things started to change quite a bit in the office, as Intermedia started to increase overall hiring. Martorano brought over several individuals from Microsoft to change the overall atmosphere of the business, including Corey Nagel, Jennifer Church, Amy Hirsch, Nama Coulibaly, Eric Roach, and Sharlene Ayabe.  Ms. Ayabe was brought on to be the new HR, and met with plaintiff personally as she did all leaders, where she wanted to know more about plaintiff and the team. Ayabe mentioned to plaintiff that she had heard of some of the concerns that plaintiff had when working under David Schiller. Plaintiff explained to her that she was correct and that plaintiff was constantly treated differently while working under him, but that felt much better now working under Craig Chirolo and that the team was doing much better now from both a mental and productive standpoint. Plaintiff explained that while working under David Schiller his work and personal life was taking a significant impact, as plaintiff was having to see a counselor and had to start taking a prescription for depression/anxiety. Ayabe explained that she was glad to hear that plaintiff was in a better place now.

COMPLAINT FOR DAMAGES - 7 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

4.12    A week after the Ayabe meeting, in early February 2017, plaintiff noticed that Ayabe and Schiller started working very closely together. It was around this time that plaintiff was being asked to change his schedule from 6am-3pm to 7am-4pm. It seemed odd to plaintiff because this was something Schiller was suggesting that plaintiff start doing, and the feedback plaintiff received from Craig Chirolo was that Ayabe was the one suggesting that plaintiff change his schedule.   After speaking with Chirolo, plaintiff agreed to do so as Chirolo and plaintiff were working quite well together at the time, the team was selling more and producing record breaking numbers for the team.   At this point plaintiff was under the impression that his career was finally getting to a positive place.   Martorano continued to make unprofessional comments.

4.13    Around this time Intermedia had a board meeting where Investor Madison Deerborn was on a call along with all upper management, Martorano, Mike Gold, Chirolo, etc. This meeting was going over on time and support staff was scheduled to use the meeting room. After going a few minutes over schedule, one of the VP's "Matt Sutherland" (a gay man) opened the door slightly and stated that they had the room scheduled. Martorano explained they were still on a call, in which Sutherland apologized and proceeded to close the door. A minute or so went by when Martorano ended the meeting. He then proceeded to approach Sutherland and cussed at him stating that he "better not ever fucking interrupted a meeting like that again," while waiving his finger in Sutherland's face in a very physically threatening matter.   Several employees filed a complaint with HR in regard to how Martorano treated Matt in a physically threatening manner.   HR took no action to address this behavior.

4.14    In June of 2017, plaintiff's team was pacing to have another great month, when Martorano pulled plaintiff into his office and asked "Marcus why are their people still coming

COMPLAINT FOR DAMAGES - 8 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

in at 6 am? You and your whole fucking team should be working 8am-5pm." Plaintiff was surprised at this question, but answered in a professional matter and explained that his team works with customers Nationwide, and that they had to start at 6 am for customers on the East Coast. Martorano replied that he was unaware of this, which again surprised plaintiff since at this point he had been with the business for several months. Martorano then dismissed plaintiff. Plaintiff's team was having a good month in June and completed it hitting above 100% of the monthly board number. One of the key factors to plaintiff's team completing the month so effectively was that they squeezed all their deals, and pushed to get as much business as they could since June was the end of the quarter. This was a directive from plaintiff's boss Chirolo, and upon doing so plaintiff warned that they would be going into July with little funnel, which was going to make it tough for them to hit their July numbers. Chirolo informed plaintiff that he was fine with this and since it was the first month of Q3 and there was plenty of time to make it up.

4.15   Once July started, as anticipated, plaintiff's team got off to a slow start, however, during their Global Sales Meeting, Martorano was giving plaintiff and his team praise saying how great of a job they were doing, and the fact that plaintiff's team was doing this while being understaffed was extremely impressive. Plaintiff and his team was also acknowledged from CEO "Mike Gold" for their performance.

4.16   As plaintiff neared the end of the month, the team started staying later, to get as much as they could have billed. The team only received credit and compensation for closed business that billed within the month. Knowing this, plaintiff worked with his team and stayed from open to close for the week of July 23, 2017 to July 29, 2017. Plaintiff's team had a nice increase in their overall billings and finished the month around 80% monthly attainment,

COMPLAINT FOR DAMAGES - 9 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

better than plaintiff thought they would end since they closed a lot of their July business in June. Chirolo informed plaintiff that he was very proud of the plaintiff's team and that the team finished respectably all things considered.

4.17    During the same week Chirolo informed plaintiff that he spoke with Martorano and that he wanted to start terminating all but three people on plaintiff's team. Plaintiff was a bit confused by this as his team had been doing quite well, and grew the business by 20%+ compared to the previous year when they followed the previous policy of having a 90-day rolling average of 80% or more.  Plaintiff explained that everyone on the team had cleared this process and inquired as to why the company would be in a position to start writing people up and firing them.  Plaintiff was told that Martorano was implementing a new policy where he wanted everyone to be at 100% year to date, or they were going to be fired. Plaintiff expressed that this was rather extreme and explained that would mean nearly everyone throughout the business would be written up or fired. It was at this point that Martorano then stated that he wanted to start by firing Paul Deagan and Les Millner. Plaintiff explained that Paul just came off a month where he hit over 100% and Les' numbers were impacted year to date due to him having surgery in January and being disabled.

4.18    Plaintiff had a meeting later with Chirolo, and Ayabe, where Chirolo agreed with plaintiff that this disciplinary process seemed odd, not to mention this was something that only plaintiff's team was being held to.  Plaintiff sent an email to Ayabe explaining his concern around this, and that Les should have been protected since he was out for surgery. It was then suggested that plaintiff meet with the VP of Legal "Jeff Eisenberg." Prior to meeting with Eisenberg later that day Ayabe informed plaintiff that even though he was out due to

COMPLAINT FOR DAMAGES - 10 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

medical concerns, if Les had even worked one day out of the month he was still responsible for hitting his number for the month.

4.19    The next day plaintiff was pulled in Martorano's office because he wanted to know why plaintiff's team was not trending to hit 100% attainment for the month of July. Plaintiff explained that plaintiff's team closed a lot of their July business in June to close out the quarter strong, and that plaintiff made Chirolo aware of this, who agreed. Martorano then started pounding on the table, saying "That sounds like a fucking excuse, I don't want your fucking excuses." Plaintiff then stated that he was just explaining what his team did and the plan that Chirolo and plaintiff had. While explaining this to Martorano, he then began slamming his fist on the desk yelled "shut the fuck up," and "you don't fucking listen." At this point plaintiff stopped talking and just told Martorano that he would work on doing better. Ayabe, from HR, was present during this entire interaction, and did nothing to correct this disrespectful behavior that only plaintiff experienced. Martorano then proceeded to ask plaintiff "why the fuck don't you want to fire Les?" Plaintiff explained his concerns from a legal stand point, and Martorano then stated "don't fucking worry about that, why else wouldn't you fire him?" Plaintiff explained that outside of the time he was out for surgery, that Les was a solid contributor to the team. It at this point Eric informed plaintiff "If you're going to put your name on it, then you can keep him, but at the end of the year if you're not at 100% for the year, we'll be having a discussion as to whether or not you belong at this company." Plaintiff explained that he would agree to those terms as his intentions were to continue his team's trajectory in the positive direction that they started.

4.20    Later that week we finally had our meeting with Jeff. On the call, it was Sharlene, Eisenberg, Chirolo and plaintiff. While Eisenberg was reviewing Les' numbers he

COMPLAINT FOR DAMAGES - 11 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

explained that though management could write Les up, it seemed odd since his numbers looked pretty good ever since his surgery. Eisenberg then suggested that Intermedia not fire Les for his numbers, especially since he was out for medical leave. At this point Ayabe starred at plaintiff with rather angry look on her face and was very short when interacting with Plaintiff thereafter.

4.21    Plaintiff then went back to work, focusing on closing out the month of July as best as possible. On July 28, 2017, plaintiff and his team stayed and focused on getting as many services activated possible working with the Onboarding team. This proved to be successful, as it allowed plaintiff's team to finish the month more respectably according to Chirolo with an 80% attainment on the month.

4.21    The next week, Monday, was the last day of the month.   The way the commissions worked, anything that billed that day would not count for that month, rather it would count to the following month, in this case August. Plaintiff's team had been putting an extensive number of hours in, plaintiff was personally sick, but came in since it was still the last day of the month.

4.22    The following day was August 1, 2017, and Martorano was out of the office, and it seemed like business as usual as the team was selling and preparing for a bounce back month in August.  Plaintiff informed Chirolo that his team was going to surpass their numbers and have an amazing month. That upcoming Friday, August 4, 2017, plaintiff was scheduled to work a half day, where he would work remote from home until 10am, and then take the rest of the day off.  During the morning, plaintiff was notified by Martorano that he was "pissed" because plaintiff's team looked like a bunch of "hillbillies."  Plaintiff did not know what he meant by this but Martorano explained that when he came in, Les was wearing shorts and

COMPLAINT FOR DAMAGES - 12 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

tennis shoes. plaintiff explained that its' summer and that the company never had a dress code. Martorano then informed plaintiff that effective immediately plaintiff's team was going to have a dress code enforced. Martorano then went on to say that he "was fucking pissed off" because plaintiff's team did not stay late on the last day of the month.  Plaintiff explained to Martorano that his team stayed late the week prior, when everyone else was going home on time, and that plaintiff's tactic worked and his team closed a lot of business during that short timeframe allowing the team to sell more than other teams within the company.   Though Martorano agreed that their services would not bill that month, he then asked plaintiff why his team did not sell Office 365. Plaintiff explained to Martorano that his team had not been trained on this product yet.

4.23    Martorano also stated that he now wanted to see reporting to show how much plaintiff's team was working. Plaintiff informed Martorano that he would get that information over to him, and did so before Martorano left at 10 am that morning. Plaintiff also explained to Chirolo what had transpired and he agreed that it seemed odd for Martorano to approach plaintiff in that way. Chirolo then reassured plaintiff to "stay focused and keep kicking ass," stating that he was not sure where all this is coming from. Plaintiff explained to Chirolo that he appreciated his encouragement, but that it was frustrating that his team and plaintiff kept getting treated differently. Plaintiff explained to Chirolo that his team had more tracked/logged activities in Salesforce than any other team in the company.

4.24    Chirolo apologized for the way Martorano was acting, and stated that Martorano was "trying to rattle us" and that plaintiff's team would get through this.  Chirolo also informed plaintiff that he saw the email that plaintiff sent to Martorano explaining the team's metrics, and that it was done well.  Shortly after, plaintiff got a response from

COMPLAINT FOR DAMAGES - 13 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

Martorano stating that he now wanted plaintiff's teams talk time. It was during this time that plaintiff was scheduled to be off had to leave. Plaintiff told Chirolo that he was not sure why Martorano wanted all these metrics immediately but that it was stressful because plaintiff had pre-planned appointments to address. Chirolo advised that plaintiff not worry and he would follow up.

4.25     A couple hours later plaintiff received a text message from Chirolo stating "it's worse than he thought" and to let him know when we could talk, stating that for some reason Ayabe was now involved. Plaintiff called Chirolo while he was on the road and was informed me that Martorano was pissed off that plaintiff left on time on the last day of the month, and that when he came into the office with Les wearing shorts, and sneakers, he lost it. Plaintiff explained to Chirolo that his team stayed late the week prior were successful and that they had never had a dress code in the office and that many people on all teams wear shorts in the summer. Chirolo then stated that Ayabe told Martorano, that Les works from home a couple days a week, and that "pissed Martorano off even more." Plaintiff explained to Chirolo that everyone knew this, and informed Chirolo that he was aware of this as well, also outlining that there are other sales agents that also work from home. Plaintiff informed Chirolo that Les work schedule was HR approved when Desiree Crull was still our HR Manager. Chirolo informed plaintiff that Ayabe started painting plaintiff's team in a bad light, and got Martorano riled up to the point where Martorano wanted to put plaintiff on a PIP (Performance Improvement Plan). Plaintiff explained to Chirolo that he did not understand, as other teams were doing that exact same things plaintiff's team was. Chirolo agreed and said that there was nothing he could do, but that he would try and make sure nothing happens to plaintiff.

COMPLAINT FOR DAMAGES - 14 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

4.26   Chirolo and plaintiff then ended the call, but spoke again a couple hours later and confirmed that Martorano was in fact going to have plaintiff put on a PIP.   Plaintiff arrived home around 5pm that day and Chirolo explained that Martorano had wanted to talk to plaintiff so plaintiff reached out to Martorano through Skype on his laptop.   Plaintiff asked Martorano if he would like to have a phone conversation, and he confirmed that he did. Plaintiff called in and had a conference call with Martorano and Chirolo.   While speaking with Martorano, he spent nearly 5-10 minutes cussing at plaintiff and telling plaintiff that he was going to "fire me," he then laughed on the phone and stated "you know what? I won't fire you, I'll fucking demote you, and make you a fucking agent."

4.27   Plaintiff explained that he did not understand why Martorano was so upset, that plaintiff's team was selling far better than previous years, and that even though they had been under staffed they were still hitting their numbers. Martorano continued to degrade plaintiff over the phone, stating that if plaintiff was not at his number that his team should be working until midnight. Plaintiff then explained that he thought wanting to have plaintiff on a PIP was a bit excessive and plaintiff assured Martorano that he put everything in place to make sure that his team exceeded their numbers. Martorano then started laughing more on the phone stating "no you're going to get a fucking PIP, this way you won't fuck up again".

4.28   During this phone conversation, Craig Chirolo was text messaging plaintiff to stay calm during Martorano's overly aggressive and racially disrespectful behavior. Plaintiff complied and informed Martorano that he would address all his concerns and make the proper adjustments needed. Martorano stated "good, and if you successfully pass the PIP, then great, just make sure you continue doing so at that level."   Chirolo reached out to plaintiff later and suggested that plaintiff just focus on having a good weekend.   Plaintiff informed him that it

COMPLAINT FOR DAMAGES - 15 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

would be tough knowing that plaintiff was getting written up when his team had been doing a good job.

4.29    The following week Chirolo was scheduled to come up to Bellevue from his office in Mountain View, California. During the beginning of the week, plaintiff was heading towards the bathroom when he saw Martorano walking out. Plaintiff said good morning to Martorano and Martorano responded to plaintiff "you better hit your fucking number this month Boy."

4.30    Chirolo met with plaintiff later and pulled him into Ayabe's office where plaintiff was issued a PIP, not for his team's numbers, but for not working an 8 am-5 pm schedule, which everyone knew, and could have asked plaintiff to change if they wanted by documenting his coaching notes more consistently and making sure none of plaintiff's agents were working from home. Though plaintiff's manager Chirolo was aware of everything that plaintiff was doing, plaintiff signed off on the document because he was fully confident that he would be able to perform to the expectations of the PIP.  Plaintiff informed Chirolo personally that he did not agree with the PIP but was only signing it so that Martorano would not fire him.

4.31    After meeting with Ayabe and Chirolo, plaintiff signed off on the PIP and began to focus on his work again. Plaintiff complied with all aspects of the PIP, and would receive weekly updates from Chirolo where it was confirmed that plaintiff was doing everything asked and encouraged to keep up the good work.  Plaintiff had a meeting with Chirolo about 2 weeks after his PIP was issued and explained to Chirolo that the team was doing a great job.  Chirolo agreed and even explained to plaintiff that he spoke with Martorano on the topic. According to Chirolo the feedback Martorano provided him regarding

COMPLAINT FOR DAMAGES - 16 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

plaintiff's team was "see Craig? Notice how he'll perform now, all you got to do is piss on him, and he'll perform."

4.32    During the month, plaintiff's team continued to perform at a high level, even working on weekends, which is something no other team was doing.  Plaintiff was notified by Chirolo, that management was looking for ways to discredit the work plaintiff had been doing.  Chirolo explained that he thought it was odd that this group has taken such an interest in plaintiff's team.

4.33    Around August 22, 2017, plaintiff had a meeting for managers to discuss disciplinary actions, stating that we were employed in an 'at will" State, and can be fired for any reason. Curt Mark asked during the call how we were supposed to measure attainment, outlining the fact that we used to operate on an 80% over a rolling 90-day period. Ayabe stated that "we didn't really have anything official" but that she'd get back to use within a week notifying us of a standard guideline to follow.

4.34    On August 22nd David Schiller approached plaintiff's desk stating that there was a call in the queue. Plaintiff said thank you, but thought it was odd that he was looking at plaintiff's team's queue, when he was now a trainer and had nothing to do with plaintiff's team anymore at that point from a management position. Plaintiff's team then noticed that Schiller and Ayabe were looking at plaintiff's team's metrics specifically, which was odd.

4.35    But on the next morning Martorano pulled plaintiff into his office and said, "I got access to metrics now, so now I know everything you motherfuckers are doing." I Plaintiff explained that he was totally fine with this, and thought that he always had access. Plaintiff's team again was by far the most active averaging around 4 hours of talk time per day, with 35+

COMPLAINT FOR DAMAGES - 17 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

logged activities per day, comparatively speaking, far better than any other team in the entire business. Martorano then stated to plaintiff, "yea ok, we'll see about that".

4.36    As the month came to an end it was announced that plaintiff's team had their best billing's month ever. However, on September 1, 2017, plaintiff was told by Chirolo that Martorano and Ayabe wanted to move forward with now firing Les and Paul. Les did not hit 100% attainment primarily due to having 6 days' worth of PTO. However, Paul hit over 100%. When plaintiff explained this to Ayabe, she said they worded the verbiage on Paul's PIP so that he had to hit his number for the month of July, even though management issued it around July 17, 2017.   Plaintiff explained that they had discussed Paul hitting his number for August which he did, but Ayabe said it was written for July, which plaintiff expressed was unfair.

4.37    That following Tuesday, September 5, 2017, plaintiff was instructed to come in early (6am) to fire both Les and Paul. Plaintiff was informed that Ayabe would also be there at that time as well. Plaintiff did explain prior to meeting to both Chirolo and Ayabe that we could be facing a legal risk, as Intermedia was not consistently writing people up, as Les and Paul, are right in line with other employees who are not on any level of disciplinary action.   Plaintiff was told by Ayabe at this point, that plaintiff's team operating just fine. Plaintiff received a text from Les around 5:52am, stating that he was going to be a few hours late. When plaintiff arrived at the office he told Ayabe this, and asked if she wanted to complete his firing over the phone. She agreed to do so, so I contacted Les and let him know the decision on his employment.   It was now shortly after 6:15am, and Paul still had not come into the office. Ayabe and plaintiff decided to go back to their normal business functions, and reconnect once Paul came to the office, however, Paul never showed up. Plaintiff received an

COMPLAINT FOR DAMAGES - 18 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

email that was supposed to go to Les from a previous employee stating that they had heard Paul was in an accident. Plaintiff explained this to Ayabe, but then, had his morning one on one with Chirolo. At was at this point Chirolo informed plaintiff that Ayabe was insinuating that plaintiff had something to do with the agents showing up late or not showing up at all. Plaintiff explained to Chirolo that he did not influence these employees schedule this day. Chirolo informed plaintiff that he agreed but that management had to be observant and prepared for what Ayabe was trying to do. Plaintiff later received word that Paul was not in the office due to having an accident where he fell 37ft and was in ICU at Harbor View.

4.38    That week Intermedia had a new hire start working for them named "Freddie Ravenill." plaintiff did with him the same thing that he did with all new hires and took him out to lunch to the Indian buffet up the street from the office. Right as they sat down plaintiff saw Nama **Coulibaly**, a black male employee of intermedia, walk into the restaurant who had been talked down to plenty of times from Eric Martorano, even though they both came from Microsoft. It was during this time, that Nama **Coulibaly** approached both plaintiff and Freddie. Nama **Coulibaly** then proceeded, to inform plaintiff that Cameron Boswell was tasked with reviewing plaintiff team's calls, to look for bad ones and give them to Martorano. When I explained this Chirolo, he seemed surprised by it, but stated that he was going to be in the office the following week. That upcoming Monday plaintiff had a phone conversation with Chirolo where he told plaintiff that he had to inform plaintiff of something. Plaintiff asked first, "it's not bad news is it?"  Chirolo explained that it was not, and that he wanted to let plaintiff know that he was going to request from Martorano, that plaintiff be removed from the PIP as plaintiff met all requirements.  Plaintiff was very pleased with this news, since his team was performing better than they had ever done before.

COMPLAINT FOR DAMAGES - 19 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

4.39    Later that day Chirolo met with plaintiff again, where plaintiff asked him the outcome of his meeting with Martorano. Chirolo then explained that after he spoke with both Martorano and Ayabe, the two of them explained to him that they wanted to extend plaintiff's PIP through the end of September, to see if plaintiff could hit his number again. Plaintiff down total of 4 agents and his quota did not adjust based on headcount. Plaintiff also explained to Chirolo that his PIP had nothing to do with his attainment. Chirolo acknowledged this, but said that there was nothing he could do, as Martorano was the deciding factor in this.

4.40    Chirolo acknowledged that Martorano had been inappropriate, and went on to say that he even went off on one of his assistants "Amy Hirsch" while they were doing a trade show in Orlando, FL. Stating that apparently Friday's are Martorano's "chocolate chip cookie day" and while they were in Orlando, Amy apparently forgot his cookies that day, and Martorano spoke and treated her in such a way that she had to be consoled by others outside.

4.41    Chirolo arrived later that week and pulled plaintiff into his office. He then explained that a task force had essentially been put together to find anything plaintiff's team did wrong to report it to Martorano. This group was compiled of Ayabe, David, and Cameron. The feedback Chirolo was giving plaintiff lined up with what Nama **Coulibaly** informed plaintiff while plaintiff was at lunch with Freddie. While going to the printer at work plaintiff had also noticed an agenda letter from Schiller where he outlined "SBSG previous metrics." This agenda stated that it was a report to Martorano. Plaintiff explained to Chirolo that it felt uncomfortable and that plaintiff was being discriminated against as he was the only Manager being scrutinized to this capacity. Plaintiff also explained to Chirolo that even though they were researching this data, plaintiff's team was still doing better than any other team

COMPLAINT FOR DAMAGES - 20 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

regarding these metrics that they were reviewing, and inquired as to whether all managers are being treated the same.

4.42    It was at this point where Chirolo explained to plaintiff that it was very much apparent that Martorano was personally discriminating against plaintiff, and had it out for plaintiff.  Plaintiff already knew of Martorano's discriminatory actions, with him calling me a boy, racially disrespectful treatment and other racial comments. The latest actions confirmed that on no level was this about plaintiff's team's performance, but rather Martorano's personal racial feelings towards plaintiff as an African-American man.

4.43    The next day Chirolo and plaintiff were having a one on one, where he told plaintiff that Martorano's "task force" found that plaintiff's team had past due tasks, and that plaintiff had given more leads to "Brian Burnette" than any other member of the team. Plaintiff reminded Chirolo at this time that he had already made him aware of the past due task, since they had an aggressive campaign that caused all their agents to be busy with new business. Plaintiff explained that Chirolo supported plaintiff's team doing this, and as for Burnette having more leads, it was basically old leads from previous employees.  Plaintiff gave Burnette those leads to see if he could get something out of them, again something plaintiff was very transparent in doing.  Plaintiff also explained to Chirolo that again compared to other teams they had less past due tasks.  Chirolo stated that plaintiff just needed to focus on his team, which plaintiff agreed in doing so, but also voiced his opinion that other managers were not being treated this way.  Chirolo agreed with this, but told plaintiff that he "could only control what you can control."  While having this discussion, Chirolo informed plaintiff that Mike Gold, the CEO, was calling him.  He picked up, while they were in the office, and apparently the conversation was regarding Les.  Once Chirolo got off the phone,

COMPLAINT FOR DAMAGES - 21 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

he explained that Les had sent a long email outlining the discriminatory behavior that Martorano consistently displayed. Chirolo stated that we warned both Ayabe and Martorano that Les could potentially go this route. Chirolo then informed plaintiff that though they were looking for anything they could to put plaintiff in a bad light, that he had figured something out to beat it.

4.44    At the end of the day the weekend had arrived and plaintiff felt so uncomfortable from work that he was heavily taking his anti-depressants trying not to worry about whether he would have a job, and having no idea what to do to overcome the obstacles outside of quitting or getting fired, as Martorano made it apparent that he did not like plaintiff and was not going to allow a black man to be successful at Inermedia. After the weekend passed, plaintiff got ready to go to work that Monday morning, September 18, 2017. On his drive in, plaintiff received a text message from Chirolo stating that he had bad news and that if plaintiff was on his way in to work, to just turn around. Chirolo then asked that plaintiff call into Ayabe's conference bridge. Upon doing so plaintiff was told that he was being terminated from the business. When plaintiff asked why he was told that it was due to having past due tasks. Plaintiff explained that he had just as many past due tasks as other teams, and that this did not seem right. Plaintiff explained that it seemed odd that the Monday after Les sent an email to Mike Gold, explaining the discriminatory behavior from Martorano and that it appeared that Les was going to take legal action, that plaintiff would then be fired the next working day. Plaintiff explained to both Chirolo and Ayabe that he warned the business that Les could end up doing this because of the inconsistencies that the company had displayed. Plaintiff explained that this felt like direct retaliation.

COMPLAINT FOR DAMAGES - 22 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

4.45    Ayabe stated that they were going to offer plaintiff a severance. Plaintiff informed her to just email it over, and shortly ended the call, completely disappointed and disgusted. Plaintiff knew he was not let go for his performance, but rather racially motivated means.

4.46    During plaintiff's employment, Martorano also referred to plaintiff as a "bitch, looking like a bitch and as an ass." Martorano also told plaintiff that "people like you need to take advantage of opportunities given to you." Plaintiff was running an incentive for his sales team where if they closed a deal on the initial call they would have the opportunity to shoot a basketball through a small hoop that plaintiff provided and win a raffle ticket that would give them the chance to win a prize.    One of plaintiff's agents (Carla Lopez) had just finished taking her shots and started to head back to her seat. Plaintiff still had a couple small basketballs with him and took both shots making them both. It was at this moment plaintiff noticed Martorano behind him.   Martorano then made the statement "you're pretty good, you must've played a lot of basketball where you grew up," insinuating that plaintiff grew up in a ghetto playing basketball.

4.47    During plaintiff's tenor working with Eric Martorano, he would often say things in passing or in his office towards plaintiff, such as "Don't be a bitch make sure you hit your fucking number" and even calling plaintiff into his office and saying "You're a pussy if you    don't    hit    your    number"    and    "Only    bitches    don't    hit    their    number."

Plaintiff informed his manager Chirolo that he hated interacting with Martorano because Martorano made plaintiff feel worthless and expendable. Plaintiff would tell Chirolo that Martorano's multitude of statements made plaintiff feel uncomfortable and that he felt

COMPLAINT FOR DAMAGES - 23 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

discriminated by his blatant racial comments.  Plaintiff also explained that he had no outlet as he did not trust HR Ayabe, as she seemed to be conspiring with Martorano.  Chirolo agreed that Martorano's behavior was unacceptable but suggested that plaintiff "Rise above" and beat them by doing a good job, stating that he noticed everything going but had no solution on how to correct it other than focusing on continuing to do a good job.

## V.    CLAIMS FOR RELIEF

**5.1    Hostile Work Environment (Gender, Race, Reporting Discrimination, RCW Chapter 49.60 *et. seq.*):** Plaintiff incorporates all prior assertions in this Complaint as the proximate cause of Plaintiff's injuries.

**5.2    Disparate Treatment (Race, Reporting Discrimination, RCW Chapter 49.60 *et. seq.*):** Plaintiff incorporates all prior assertions in this Complaint as the proximate cause of Plaintiff's injuries.  Plaintiff was treated with disparate treatment for participation in reporting sexual harassment, and/or provided information to or participated in a proceeding to determine whether discrimination occurred.

**5.3    Actual Discharge (Race, Reporting Discrimination, RCW Chapter 49.60 *et. seq.):*** Plaintiff incorporates all prior assertions in this Complaint as the proximate cause of Plaintiff's injuries.  Plaintiff was terminated for participation in reporting sexual harassment, and/or provided information to or participated in a proceeding to determine whether discrimination occurred.

**5.4    Unlawful Retaliation (Race, Reporting Discrimination, Violation of RCW 49.60 and in Violation of Public Policy):** Plaintiff incorporates all prior assertions in this Complaint as the proximate cause of Plaintiff's injuries.  Plaintiff was retaliated against for

COMPLAINT FOR DAMAGES - 24 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

participation in reporting sexual harassment, and/or provided information to or participated in a proceeding to determine whether discrimination occurred.

**5.5    Intentional/Negligent Infliction of Emotional Distress**: Plaintiff incorporates all prior assertions in this Complaint as the proximate cause of Plaintiff's injuries.

**5.6    Termination in Violation of Public Policy.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries.

## VI.    DAMAGES

6.1    As a direct and proximate result of defendant's intentional, reckless and negligent conduct, and unlawful conduct in violation of RCW 49.60 (retaliation, hostile environment, disparate treatment, wrongful termination) and termination in violation of public policy, Plaintiff has sustained injuries, including but not limited to, mental and emotional distress, humiliation, emotional anguish, loss of enjoyment of life, wage loss, retirement benefit loss, future lost earnings, fringe benefits (past and future) and other general and special damages presently unknown. As a result of defendant's actions, omissions and negligence, Plaintiff has suffered other general and special damages, which will be proven at the time of trial. Plaintiff is entitled to damages pursuant to RCW 49.60 *et seq.* including costs and attorney's fees incurred in bringing and maintaining this action.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

(1)    For such special damages as shall be established at time of trial;

(2)    For such general damages as shall be established at time of trial;

COMPLAINT FOR DAMAGES - 25 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977

(3)    For such lost wages, back pay, front pay, and benefits in amounts to be established at trial;

(4)    For such punitive damages allowable by law; and

(5)    For such attorneys' fees, interest, costs, and such other and further relief as shall be allowed by law or deemed just and equitable.

Dated this ____7____ day of November, 2017.

LAW OFFICE OF THADDEUS P. MARTIN

By _____
Thaddeus P. Martin, WSBA No. 28175
Attorney for Plaintiff

COMPLAINT FOR DAMAGES - 26 of 26

Law Office Of Thaddeus P. Martin
7121 27th Street West
University Place, WA 98466
Phone: 253-682-3420
Fax: 682-0977